JOURNAL ENTRY AND OPINION
{¶ 1} Cuyahoga County Grand Jury indicted defendant-appellant, Elwood Sadowsky, in a multiple count indictment. The first count charged Sadowsky with the murder of his four-month-old daughter, Amanda, on June 29, 2007. Count two charged Sadowsky with felonious assault of Amanda on the same day, and counts three, four, five, and six charged Elwood with endangering children, specifically Amanda, that day. Count seven charged Sadowsky with felonious assault, and counts eight, nine and ten charged Sadowsky with endangering children (Amanda), in the several weeks prior to her death.
 {¶ 2} Sadowsky subsequently pled guilty to murder, as charged in count one; endangering children, as charged in count three; and felonious assault, as charged in count seven. The trial court sentenced Sadowsky to the agreed-upon sentence of 18 years to life imprisonment for the three offenses. It subsequently denied Sadowsky's post-sentence motion to withdraw his plea.
 {¶ 3} On appeal, Sadowsky contends, for various reasons, that he was denied due process[1] when the trial court accepted his guilty pleas. He further argues that he was denied the right to effective assistance of counsel and that *Page 4 
the indictment was defective. Finally, he contends that the trial court erred in denying his post-sentence motion to withdraw his plea. Finding no merit to any of Sadowsky's assignments of error, we affirm.
 {¶ 4} The record of the plea hearing indicates that the prosecutor explained the charges to which Sadowsky would plead guilty and the agreed sentence. The trial judge reviewed the charges to which Sadowsky would plead and the agreed-upon sentence, and defense counsel confirmed the agreement. Upon questioning by the trial judge, Sadowsky confirmed that he had no questions about the plea. Sadowsky further stated that although he was taking several medications, he was able to think clearly and of "sound mind and reason." Sadowsky told the judge, "I'm not high. I'm not drunk, sir. I'm just very grieved." After the trial judge fully informed Sadowsky of his constitutional rights and confirmed that he understood those rights, the judge accepted Sadowsky's plea.
 {¶ 5} The trial judge then proceeded to sentencing. After hearing from the prosecutor, Sadowsky, and Sadowsky's wife, the judge sentenced Sadowsky to the agreed sentence of 18 years to life imprisonment.
 {¶ 6} Under Crim. R. 11(C)(2), when a court accepts a guilty plea in a felony matter, it must address the defendant personally and 1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty; 2) inform the defendant of and *Page 5 
determine that the defendant understands the effect of the plea, and that the court may proceed with judgment after accepting the plea; and 3) inform the defendant and determine that the defendant understands that he is waiving his rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.
 {¶ 7} The trial court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. State v. Ballard (1981), 66 Ohio St.2d 473, paragraph two of the syllabus. With respect to the other requirements of Crim. R. 11(C)(2), reviewing courts consider whether the trial court substantially complied with Crim. R. 11(C)(2) and whether the defendant subjectively understood the implications of his plea and the nature of the rights he was waiving. State v. Nero (1990), 56 Ohio St.3d 106, 108;State v. Stewart (1977), 51 Ohio St.2d 86, 93.
 {¶ 8} Sadowsky first complains that he was denied due process because the trial court did not ascertain that he understood the nature of the charges against him. Specifically, Sadowsky argues that the trial court never identified for him the first or second degree felony "offense of violence" that provided the underlying offense for the murder charge. However, as this court has held, "courts are not required to explain the elements of each offense, or even to specifically ask the defendant whether he understands the charges, unless the *Page 6 
totality of the circumstances shows that the defendant does not understand the charges." State v. Whitfield, Cuyahoga App. No. 81247, 2003-Ohio-1504, ¶ 14; State v. Steele, Cuyahoga App. No. 85901,2005-Ohio-5541, ¶ 11. There is nothing in this record to indicate that Sadowsky did not understand the charges to which he pled guilty.
 {¶ 9} Sadowsky next contends that the court failed to inform him that his plea was an admission of guilt. He further argues that he was denied due process because the trial court accepted his plea, even though at sentencing he told the court that he "never intended to harm [his] daughter [and] what happened was a true accident." Sadowsky argues that this statement should have alerted the court that he may not have understood that by pleading guilty, he was admitting the charges.
 {¶ 10} But a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. State v. Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 19. The record reflects that Sadowsky's statement of accident occurred during allocution, well after the trial judge had accepted his plea, and not during the plea colloquy. Further, the record indicates that Sadowsky understood that by pleading guilty, he was admitting the charges and that the trial court would be imposing the agreed-upon sentence as a result of his plea. Sadowsky cannot bootstrap a self-serving *Page 7 
comment he made after his plea to now claim he did not understand the effect of his guilty plea.
 {¶ 11} Sadowsky next complains that the trial judge failed to properly advise him of his right to a jury trial. The transcript of the plea hearing shows otherwise. The transcript reflects that the trial judge first advised Sadowsky that he had a right to a trial and, then, that he had a right to a trial where the burden of proof would be on the State to prove his guilt beyond a reasonable doubt "unanimously by a jury of 12 [unless] you waive that jury."
 {¶ 12} Next, Sadowsky complains that he was denied due process because the trial court accepted his plea without first determining he was competent to enter a plea. Sadowsky contends that he told the judge during the plea colloquy that he had a "cerebral vascular neurological disorder" and later, at sentencing, his wife likewise informed the court that he suffers from a rare neurological disorder called Moyamoya. Sadowsky contends that in light of these comments, the judge should have referred him for a competency evaluation before accepting his plea.
 {¶ 13} Sadowsky's argument ignores the transcript of the plea colloquy. The transcript reflects that the trial judge painstakingly inquired of Sadowsky and his attorney as to the issue of competency. It further indicates there was nothing about Sadowsky's conduct or answers that would have caused the court to question his competency. *Page 8 
 {¶ 14} Sadowsky next contends that his plea was invalid because the trial court advised him that he would be subject to five years of postrelease control, despite his guilty plea to murder, to which postrelease control does not apply.
 {¶ 15} "[A] defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. *** The test is whether the plea would have otherwise been made." Nero, supra. Sadowsky's argument is without merit because he has failed to show, much less even allege, that he would not have pled guilty but for the trial court's error.
 {¶ 16} Sadowsky next argues that his counsel was ineffective for not exploring his mental condition and competency prior to his plea. Sadowsky claims that in light of his neurological condition, counsel should have investigated whether he suffered a seizure that accidently caused Amanda's death.
 {¶ 17} An attorney is presumed to be competent and to perform his duties ethically and competently. State v. Lytle (1976),48 Ohio St.2d 391, 396. To establish ineffective assistance of counsel, Sadowsky must demonstrate that his lawyer's performance fell below an objective standard of reasonable performance and that he was prejudiced by his lawyer's deficient performance, such that, but for counsel's error, the result of the proceeding would have been different. *Page 9 Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 18} Sadowsky has not met his burden. The record reflects that Sadowsky never claimed that his neurological condition caused Amanda's death. The police reports indicate that Sadowsky told the police that he tripped or fell on something, causing him to drop Amanda, but at no time did he blame his neurological condition for what happened. Thus, Sadowsky has not demonstrated that counsel's failure to investigate his neurological condition was ineffective. Further, Sadowsky makes no claim that he would not have pled guilty but for counsel's alleged error. Accordingly, he has failed to demonstrate any prejudice.
 {¶ 19} Next, in a supplemental assignment of error filed after the Ohio Supreme Court issued its decision in State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), Sadowsky argues that the indictment was defective and must be dismissed because it failed to allege the mens rea for murder.
 {¶ 20} In Colon I, the Ohio Supreme Court held that a defendant may challenge for the first time on appeal an indictment that omits an essential element of the crime, such as mens rea. Id., ¶ 39. It further held that such a defect will be held to be structural error "[w]hen a defective indictment so permeates a defendant's trial such that the trial court cannot reliably serve its function as a vehicle for determination of guilt or innocence." Id., ¶ 44. *Page 10 
 {¶ 21} On reconsideration, the Ohio Supreme Court limited the broad sweep of Colon I and held that the structural error analysis for defective indictments is appropriate only in "rare cases" in which multiple errors occurred as a result of the defective indictment.State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, ¶ 8 ("ColonII"). The Court found that in most defective indictment cases, the court may analyze the error under the Crim. R. 52(B) plain error standard. Id.
 {¶ 22} The indictment in this case was defective because it omitted the culpable mental state for murder. Plain error analysis is appropriate, however, because this is not that rare case where multiple errors occurred as a result of the defective indictment. Under plain error analysis, we conclude that nothing in the record indicates that the court failed to properly consider whether the facts met all the elements of the crime, including the appropriate mens rea.
 {¶ 23} Further, we hold that a plea of guilty waives any defect in the indictment, including a failure to allege a culpable mental state. "The plea of guilty is a complete admission of the defendant's guilt." Crim. R. 11(B)(1). A defendant who pleads guilty is not merely admitting that he did the acts described in the indictment; he is admitting guilt of a substantive crime. State v. Kitzler, 3rd Dist. No. 16-02-06, 2002-Ohio-5253, ¶ 12. Thus, a defendant who pleads guilty is limited on appeal; he may only attack the voluntary, knowing, and intelligent nature of the plea and may not raise independent claims relating *Page 11 
to the deprivation of constitutional rights that occurred prior to the entry of the plea. Woods, supra. See, also, State v. Kelley (1990),57 Ohio St.3d 127; Stacy v. Van Coren (1969), 18 Ohio St.2d 188; State v.Salter, 8th Dist. No. 82488, 2003-Ohio-5652.
 {¶ 24} The defendant in Colon I did not plead guilty, as Sadowsky did here. Like other courts that have considered this issue, we are not persuaded that the Colon I Court was overruling the longstanding waiver rules with regard to guilty pleas. See State v. Easter, 2nd Dist. No. 22487, 2008-Ohio-6038; State v. Gant, 3rd Dist. No. 1-08-22, 2008-Ohio-5406. Accordingly, we find that by admitting his guilt to the crime of murder, Sadowsky waived any alleged defect in the indictment, including the failure to allege a mens rea, for purposes of appeal.
 {¶ 25} Sadowsky's last two assignments of error challenge the trial court's denial of his post-sentence motion to withdraw his guilty pleas. The trial court denied Sadowsky's motion without a hearing and ruled that:
 {¶ 26} "The defendant made a knowing, intelligent, voluntary plea after he was fully informed of his rights, options and the consequences. The case was set for trial, the witnesses appeared and were ready to testify, the defendant received full and extensive discovery of the evidence and when it was time to call the jury into the courtroom, the defendant plead guilty. The defendant knew what the sentence he faced was and made a voluntary, intelligent, and knowing plea to the crimes he committed against his child. The defendant knew exactly *Page 12 
what he was doing and what he was facing. Defendant's motion to withdraw pleas of guilty is denied."
 {¶ 27} Sadowsky argues that the trial court abused its discretion in denying his motion without a hearing and in ruling on the motion based on its personal recollection of the facts.
 {¶ 28} A motion to withdraw a guilty plea after the imposition of sentence may be granted by the trial court only to correct "manifest injustice." Crim. R. 32.1; State v. Xie (1992), 62 Ohio St.3d 521;State v. Smith (1977), 49 Ohio St.2d 261; State v. Peterseim (1980), 68 Ohio App.2d 211. This court's review of the trial court's decision on the motion is limited to the issue of whether the trial court abused its discretion. State v. Zimmer, 8th Dist. No. 90846,2008-Ohio-6953, ¶ 22.
 {¶ 29} As set forth in our preceding discussion regarding Sadowsky's other assignments of error, we find no irregularities with Sadowsky's plea and, consequently, no "manifest injustice." Accordingly, the trial court did not abuse its discretion in denying Sadowsky's motion to withdraw his plea.
 {¶ 30} The trial court's decision to deny a post-sentence motion to withdraw a plea without a hearing is also given deference, especially in a case in which the trial court took the plea and thus was familiar with the facts of the case, and evidentiary materials to support an argument that the plea should be withdrawn are lacking. Zimmer, ¶ 24, citingState v. Atkinson, 8th Dist. No. 85773, 2005-Ohio-5348. *Page 13 
Here, the trial judge who denied the motion took Sadowsky's plea and was familiar with the case. Also, since Sadowsky never requested an oral hearing on his motion, the trial court can hardly be faulted for failing to conduct one. Zimmer, ¶ 24, citing State v. Jackson-Washington, 8th Dist. Nos. 90459 and 90648, 2008-Ohio-3815.
 {¶ 31} Finally, we find no error in the trial court's journal entry explaining its reasons for denying the motion.
 {¶ 32} Appellant's assignments of error are overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and MARY J. BOYLE, J., CONCUR.
[1] We assume that Sadowsky's due process arguments actually challenge whether his plea was knowingly, voluntarily, and intelligently made, as a defendant who has pled guilty may attack only the voluntary, knowing, and intelligent nature of the plea, and "`may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" State v.Woods, 3rd Dist. No. 1-05-82, 2006-Ohio-2368, ¶ 14, quoting State v. Spates (1992), 64 Ohio St.3d 269, 272. *Page 1